OPINION
Appellant, The Penmark Company, appeals the entry of default judgment made by the Girard Municipal Court on September 16, 1999.
Appellant executed a purchase agreement on January 29, 1997, for the purchase of engraving equipment from appellee, MacPherson Meistergram, Inc. The equipment was shipped to appellant on March 19, 1997. There is no record of appellant having paid for the equipment. The equipment was then apparently sold by appellant to Advent Designs in March 1997.
Appellee filed a complaint on March 16, 1999, demanding payment of $14,369.72 plus interest, alleging that appellant had failed to pay for engraving equipment. On April 29, 1999, appellee served appellant with requests for admission. Appellee's Request for Admission No. 6 asked appellant to admit that "Advent Designs paid Penmark in two checks, one in the amount of $17,750, the other in the amount of $1,400, both of which were deposited into Penmark's account at Bank One on or about March 28, 1997." Appellant denied this request to admit.
At the pretrial hearing held on June 25, 1999, appellee alleged that appellant had sold the engraving equipment, which it had purchased from appellant, to Advent Designs for $19,150, and that Advent Designs had paid appellant $19,150 for the equipment, but appellant had failed to pay the $14,369.72, which it owed appellee. Appellant claimed that the engraving equipment was defective and that Advent Designs had complained about its quality. To refute appellant's allegations, appellee produced two checks from March 26, 1997, from Advent Designs payable to appellant, bearing appellant's endorsements for deposit, one in the amount of $17,750, and the other in the amount of $1,400.
On July 2, 1999, appellee served its interrogatories and request for production on appellant. On August 9, 1999, appellee filed a motion to compel answers to its interrogatories and request for production. The trial court granted the appellee's motion to compel on August 10, 1999. On August 17, 1999, appellant filed a notice of compliance with discovery, which included a certificate of service. Appellee, however, alleged that it never received a response to its interrogatories and request for production and filed a motion for sanctions on September 9, 1999. Appellant claims not to have received the appellee's motion for sanctions.
On September 16, 1999, without first holding a hearing, the trial court entered a default judgment against appellant pursuant to Civ.R. 37(B)(2)(c). The court determined that appellant failed to reply to appellee's request for admissions, interrogatories and request for production, that appellee made reasonable efforts to resolve this issue, and that appellant's conduct "impaired and impeded the administration of justice by virtue of his dilatory tactics." The court noted that John Penza ("Penza"), the president of appellant, had clearly lied in replying to appellee's Request for Admission No. 6. The trial court also noted that Penza had apparently provided false information to appellant's counsel when appellant represented to the trial court that Advent Designs had complained about the quality of the engraving equipment.[1]
On November 22, 1999, the trial court awarded appellee's attorney fees and determined that since all of appellee's claims had been adjudicated, the September 16, 1999 and November 22, 1999 judgment entries were final appealable orders.
Appellant has filed a timely appeal and asserts the following assignment of error:
 "[1.] The trial court erred in striking the answer filed by Appellant and granting default judgment to Appellee as a sanction for an `alleged' failure to comply with discovery, when Appellant, at all times, complied with the orders of the trial court regarding discovery, filed an appropriate Notice of Compliance with Discovery in the trial court, and properly served discovery responses upon opposing counsel."
Appellant makes three claims with respect to its first assignment of error. First, appellant contends that it complied with the order of the trial court regarding discovery; therefore, the trial court cannot award sanctions to the appellee pursuant to Civ.R. 37. Second, appellant claims that there is no evidence of any willfulness or bad faith on the part of appellant; thus, the sanction in this case was overly harsh. Finally, appellant argues that the trial court failed to follow the procedures required by Civ.R. 55; and, hence, cannot award a default judgment under Civ.R. 37.
Civ.R. 37(B)(2) states in part: "If any party * * * fails to obey an order to provide or permit discovery, * * * the court in which the action is pending may make such orders in regard to the failure as are just, and among others * * * [a]n order * * * dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." This court noted in Fester v. Price (Dec. 26, 1997), Geauga App. No. 96-G-2033, unreported, at 2, 1997 WL 799418, citingNakoff v. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256, that "[i]t is well established that a trial court has broad discretion to impose sanctions against a party violating the discovery rules, and this court will not reverse the trial court's determination on this issue absent an abuse of discretion." This court further noted that "the granting of a default judgment * * * is a harsh remedy which should only be imposed when `the actions of the faulting party create a presumption of willfulness or bad faith.'" Fester at 2, quoting Marten v. Casgar (June 30, 1994), Lake App. No. 93-L-115, unreported at 4, citing Russo v.Goodyear Tire Rubber Co. (1987), 36 Ohio App.3d 175, 179.
In this case, appellee moved for sanctions on September 9, 1999, due to the failure of appellant to respond to appellant's interrogatories and request for production that were served upon appellant on July 2, 1999. However, on August 17, 1999, appellant had filed a notice of compliance with discovery with the court stating that it had responded to appellee's interrogatories and request for production on that date. This court believes that the notice of compliance with discovery filed by appellant raises a factual issue as to whether appellant responded to appellee's interrogatories and request for production. The trial court, in order to resolve this factual dispute regarding the compliance issue, should have notified appellant of its intention to hold a hearing and should have held such a hearing before entering a default judgment, per Civ.R. 37, against appellant.
In Fester, the appellants completely ignored their duty to respond to the appellee's discovery requests. The appellee sought discovery of a corporate record book on April 16, 1996. The appellants failed to respond and, on August 12, 1999, the appellee filed a motion to compel. On August 23, 1999, the trial court ordered the appellants to produce the corporate record book. On October 17, 1999, a hearing was held and the appellants asserted that they were unable to produce the corporate record book based on an attorney's work product lien, but could produce no evidence or authority to support that assertion. On October 21, 1999, the appellee moved for judgment by default pursuant to Civ.R. 37(B)(2)(c). Finally, on November 7, 1999, the trial court granted judgment against the appellants. In affirming the determination of the trial court, this court noted that the "[a]ppellants, although aware that the granting of a default judgment by the trial court was a possibility, did nothing." (Emphasis sic.) Fester at 3.
Appellant in the instant case, by filing a notice of compliance with respect to discovery, has provided some submissions indicating that he did, in fact, respond to appellee's interrogatories and request for production of documents.[2]
When the record does not reflect willfulness or bad faith on the part of the responding party, it is an "abuse of discretion for a trial court to grant a default judgment for failing to respond to discovery requests." Toney v. Berkemer (1983), 6 Ohio St.3d 455, syllabus. If a subsequent evidential intake confirms the allegations of willful deceit and bad faith, then the sanction of the grant of a default judgment under Civ.R. 37 does not seem so inappropriate.
However, until a factual determination is made as to whether appellant failed to comply with the trial court's discovery order, no showing of "willfulness or bad faith" on the part of appellant is possible. Therefore, it was an abuse of discretion for the trial court to enter a default judgment for appellee.
For the foregoing reasons, appellant's assignment of error is well-taken, and the judgment of the Girard Municipal Court is reversed and remanded.
 ____________________________________ PRESIDING JUDGE DONALD R. FORD
CHRISTLEY, J., NADER, J., concur.
[1] There is a lack of evidential material in this case to support the trial court's determination in its judgment entry of September 16, 1999. As far as this court can ascertain, the facts outlined by the trial court in its judgment entry are not supported by affidavit or other evidential intake.
[2] Appellee cites Fester for the proposition that a motion for sanctions puts the non-complying party on notice that a default judgment is a possibility. The Fester court, in turn, cited Quonset Hut, Inc. v.Ford Motor Co. (1997), 80 Ohio St.3d 46 as authority for that proposition. In Quonset Hut, the trial court dismissed the case pursuant to Civ.R. 41(B)(1). Ford had served discovery requests on Quonset Hut in January 1995. In June 1995, the trial court ordered Quonset Hut to respond to Ford's January discovery requests within fourteen days. In August 1995, Quonset Hut had yet to respond, so Ford filed a motion for sanctions, including dismissal. On October 26, 1995, nine months after the discovery requests had been served, the trial court granted Ford's motion for dismissal. The Supreme Court of Ohio held that Ford's motion for sanctions was sufficient notice of the impending dismissal. In that case, however, there was no issue as to whether Quonset Hut had ever complied with the trial court's order to respond to Ford's discovery requests. In addition, Quonset Hut had two months from the time Ford filed its motion for sanctions until the time the case was actually dismissed.